**NOT FOR PUBLICATION**

**FILED**

UNITED STATES COURT OF APPEALS

AUG 10 2018

FOR THE NINTH CIRCUIT

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

| | |
|---|---|
| MARY HOLZHAUER, Individually and as the Personal Representative of Harry Holzhauer, deceased, <br><br>     Plaintiff-counter-defendant-Appellee, <br><br>  v. <br><br> GOLDEN GATE BRIDGE HIGHWAY & TRANSPORTATION DISTRICT, a governmental entity, <br><br>     Defendant-cross-defendant-cross-claimant-Appellant, <br><br> DAVID P. RHOADES, an Individual, <br><br>     Defendant-cross-defendant-cross-claimant-Appellee. | No.   17-15092 <br>       17-15763 <br><br> D.C. No. 3:13-cv-02862-JST <br><br> MEMORANDUM* |

Appeal from the United States District Court
for the Northern District of California
Jon S. Tigar, District Judge, Presiding

Argued and Submitted June 14, 2018
San Francisco, California

Before: SCHROEDER and GOULD, Circuit Judges, and DU,** District Judge.

_____

* This disposition is not appropriate for publication and is not precedent except as provided by Ninth Circuit Rule 36-3.

This case concerns a marine accident involving a pleasure speedboat and a passenger ferry in San Francisco Bay. In this consolidated appeal, involving just some aspects of the litigation, the Golden Gate Bridge Highway & Transportation District (Golden Gate Bridge) appeals the district court's admission of a United States Coast Guard interview summary and the district court's denial of its petition to limit liability. Addressing each of these issues in turn, we affirm.

1. Appellant Golden Gate Bridge argues that it is entitled to a new trial because the district court admitted a Coast Guard interview summary even though 46 U.S.C. § 6308 prohibits the admission of reports on marine casualty investigations. Appellees Rhoades and Holzhauer contend that 46 U.S.C. § 6308 does not apply because the summary was part of the investigative file—not part of the Coast Guard's formal report. Appellees Rhoades and Holzhauer further argue that the summary is admissible under the public record exception.

The statutory and regulatory law here seem clear in their aim to exclude reports of marine casualty investigations: The statute provides that except as permitted under other law, "no part of a report of a marine casualty investigation conducted under . . . this title, including findings of fact, opinions, recommendations, deliberations, or conclusions, shall be admissible as evidence or

** The Honorable Miranda M. Du, United States District Judge for the District of Nevada, sitting by designation.

subject to discovery in any civil or administrative proceedings, other than an administrative proceeding initiated by the United States." 46 U.S.C. § 6308(a). The relevant regulation states, "investigations of marine casualties and accidents and the determinations made are for the purpose of taking appropriate measures for promoting safety of life and property at sea, and are not intended to fix civil or criminal responsibility." 46 C.F.R. § 4.07-1.

The district court initially denied Golden Gate Bridge's motion in limine to exclude the Coast Guard's summary because Golden Gate Bridge sought to prohibit the summary's use but had given the report to its expert and the expert had relied on the summary. At trial, the district court permitted Rhoades to use the interview summary to impeach Captain Shonk, the ferry captain, concluding that § 6308 did not prohibit its use and that the public record exception to hearsay applied. After the trial, Golden Gate Bridge moved for a new trial arguing that the admission of the interview summary was an evidentiary error that tainted the outcome. The district court denied Golden Gate Bridge's motion for a new trial, concluding that it did not err in admitting the investigation summary, and that issue has now made its way to us on this appeal. The district court concluded that § 6308 did not bar admission of the interview summary because the interview summary did not constitute "findings of fact, opinions, recommendations,

3

deliberations, or conclusions of the Coast Guard," even though the protections of §
6308 were expansive.

Reviewing the denial of the motion for new trial for abuse of discretion and
the interpretation of the statue *de novo*, we conclude that the district court did not
err. We start with the language of the statute when conducting statutory
interpretation. *U.S. ex rel. Hyatt v. Northrop Corp.*, 91 F.3d 1211, 1213 (9th Cir.
1996). Section 6308 prohibits any "part of a report of a marine casualty
investigation" from being used as evidence in civil or administrative proceedings.
The statute specifies that parts of a report include "findings of fact, opinions,
recommendations, deliberations, or conclusions." 46 U.S.C. § 6308. But here, we
have a summary of an interview. We are persuaded by the reasoning in *In re
Complaint of Danos & Curole Marine Contractors, Inc.*, 278 F. Supp. 2d 783, 785
(E.D. La. 2003), wherein a district court held that photographs taken by Coast
Guard personnel were admissible. *Id.* There the court concluded that the Coast
Guard's "photographs do not provide findings of fact, opinions, recommendations,
deliberations, nor conclusions, [instead], they merely illustrate the condition of the
objects depicted in the photos as they existed on September 19, 2002 *at the time
that the pictures were taken.*" *Id.* That court reasoned that while "the list provided
in 46 U.S.C. § 6308(a) is illustrative and not exclusive, [it did] not believe that the
photographs are the type of conclusory items which the statute seeks to exclude."

4

*Id.* The court expressly declined to adopt such an expansive reading of 46 U.S.C. § 6308(a). *Id.*

Similarly, the interview summary here does not contain the Coast Guard's findings of fact or conclusions. The one-page summary instead documents what Captain Shonk said when asked questions about the incident. In his interview with the Coast Guard, Captain Shonk recalled, "He did not make any cell phone calls or texts during the transit when the collision happened." This statement was used to impeach Captain Shonk on cross-examination because he had stated on direct that he had made an "operations" call when maneuvering away from the dock. Admission of this statement does not conflict with the letter or purpose of § 6308. *See Guest v. Carnival Corp.*, 917 F. Supp. 2d 1242, 1246 (S.D. Fla. 2012). The statute was drafted to prevent Coast Guard findings of liability from being used to impose liability in civil contexts. *See* 46 C.F.R. § 4.07-1(b) ("The investigations of marine casualties and accidents . . . are not intended to fix civil or criminal responsibility."). Admission of the one-page interview summary for purposes of impeachment did not violate that purpose because the summary does not contain conclusory comments or judgments on liability and was not used directly to "fix civil or criminal responsibility." We affirm the district court's denial of the motion for a new trial based on the use at trial of the Captain Shonk interview summary.

Also, the interview summary does not constitute inadmissible hearsay under the Federal Rules of Evidence because the interview summary is admissible under the public record exception and as an admission of a party opponent. The public record exception to hearsay applies when a record or statement of a public office sets out factual findings of a legally authorized investigation and the opponent does not show lack of trustworthiness. Fed. R. Evid. 803(8). Here, the interview summary was created as part of the Coast Guard's practice of investigating all boating accidents in navigable waters. There is also no argument that the summary lacked trustworthiness. Additionally, there is no hearsay barrier to the admission of the statements in summary. The statement of a party opponent, in this case Captain Shonk as an employee of Golden Gate Bridge, is not hearsay. *See* Fed. R. Evid. 801(d)(2)(D). We affirm.

2.     Golden Gate Bridge argues that the district court erred by denying its Petition for Limitation of Liability because the district court wrongly concluded that Golden Gate Bridge had knowledge or privity with Captain Shonk. Golden Gate Bridge argues that no evidence showed that its management knew Captain Shonk made routine operations calls while adjusting the speed and course of the ferry, and that no evidence was provided to contradict its own evidence that the ferry operator had discretion in making operational communications. Further, there was no evidence that the Golden Gate Bridge was "on notice" of similar

6

prior incidents.  Appellees Rhoades and Holzhauer argue that there was evidence that showed that Golden Gate Bridge had privity and knowledge of Captain Shonk's action—the use of the cellphone while operating the ferry—and that the district court's findings were not "illogical, implausible, or without support on inferences that may be drawn from the facts in the record."

The Limitation of Liability Act limits shipowner liability arising from the unseaworthiness of the vessel or the negligence of the vessel's crew to the value of the boat unless the condition of unseaworthiness or the act of negligence was within the shipowner's "privity or knowledge."  46 U.S.C. § 30505(b); *In re BOWFIN M/V*, 339 F.3d 1137 (9th Cir. 2003).  The shipowner has the burden of proving that the act or condition was outside its privity and knowledge after the claimant establishes the act or condition caused the loss.  *In re BOWFIN M/V*, 339 F.3d at 1138.  Whether a defendant is without privity or knowledge is a question of fact.  *See Coryell v. Phipps*, 317 U.S. 406, 411 (1943).

The district court denied Golden Gate Bridge's petition, concluding that Golden Gate Bridge did not meet its burden of showing lack of privity or knowledge.  The district court agreed with the parties that the first element— whether a negligent act caused the plaintiffs' harm—was satisfied based on Captain Shonk's use of a personal cell phone moments before the collision.  The district court then concluded that Golden Gate Bridge did not meet its burden of

7

showing lack of privity or knowledge because Golden Gate Bridge did not have a policy against use of personal cell phones by captains, because Golden Gate Bridge knew that its captains carried personal cell phones with them while operating the ferries, and because Golden Gate Bridge permitted the use of personal cell phones.

We conclude that the district court did not err. We review the district court's factual findings for clear error. *See In re BOWFIN M/V*, 339 F.3d at 1138; *Hercules Carriers, Inc. v. Claimant State of Fla., Dep't of Transp.*, 768 F.2d 1558, 1565 (11th Cir. 1985). Privity or knowledge does not require actual knowledge, but includes anything the shipowner could have discovered with reasonable investigation. *Hercules Carriers, Inc.*, 768 F.2d at 1564. Here, Captain Shonk was on his personal cell phone at 4:07 p.m. for two minutes, and the accident occurred at 4:09 p.m. Golden Gate Bridge did not have a policy against the use of personal cell phones, and allowed its ferryboat operators to carry personal cell phones. Those facts are sufficient to establish knowledge. It was not clear error for the district court to find that Captain Shonk's cell phone use contributed to his distraction while moving the ferry, and that Golden Gate Bridge's lack of a policy against cell phone use and ability to discover with "reasonable investigation" that ferry operators used their cellphone while operating the ferry gave it constructive knowledge that negligence could occur. We affirm the district court's denial of the petition to limit liability.

8

**AFFIRMED.**